IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANNE KERR, ) | |
| ) | |
| Plaintiff, ) | No. 10 CV 4378 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| SOUTH COOK INTERMEDIATE SERVICE ) | |
| CENTER 4 GOVERNING BOARD; ) | |
| KENNETH PETERSON, individually; ) | |
| VANESSA KINDER, individually; ) | |
| JON NEBOR, JAMES STEYSKAL, ) | |
| KATHLEEN HATZCEL, THOMAS AMADIO, ) | |
| DEAN BARNETT, LARRY BURDA, ) | |
| PATRICK DEAN, CANDY DINWIDDIE, ) | |
| MICHAEL HOLLINGSWORTH, ) | |
| CHARLES FLOWERS, SHARON SCOTT, ) | |
| and EVA NORRIS, all in their official capacities ) | |
| as members of the South Cook Intermediate ) | |
| Service Center 4 Governing Board, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Anne Kerr filed a four-count complaint alleging various claims based on the termination of her employment as Dean of Students at the Regional Institute for Scholastic Excellence ("R.I.S.E.") in Chicago Heights, Illinois. Count I alleges, pursuant to 42 U.S.C. § 1983, that defendants South Cook Intermediate Service Center #4 ("ISC-4"), Vanessa Kinder (ISC-4's executive director), and Kenneth Peterson (the principal of R.I.S.E), violated her Fourteenth Amendment right to procedural due process by firing her without a hearing and without notice of the charges against her. The rest of the complaint alleges Illinois state law claims for: breach of contract against defendant ISC-4 (Count II); issuance of a writ of mandamus directing the ISC-4 Governing Board, whose members she has sued in their official

capacities, to provide plaintiff with a hearing and notice of the charges against her, and to either reinstate her or pay her full salary from the date she was terminated until the date a hearing is held (Count III); and issuance of a writ of certiorari requiring defendant ISC-4 to certify the record of its proceedings through which it decided to terminate plaintiff's employment (Count IV). Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, defendants' motion to dismiss is granted as to Count I, and the court declines to extend supplemental jurisdiction over Counts II, III, and IV.

## BACKGROUND[1]

Plaintiff Anne Kerr was hired as a teacher at R.I.S.E. on August 1, 2005, and became its Dean of Students one year later, on August 1, 2006. R.I.S.E. is an alternative school program for disruptive youth in grades six through twelve, and is available to students in the 66 local public school districts serviced by ISC-4, in southern suburban Cook County. 105 Ill. Comp. Stat. Ann. 5/13A (West 2006). At all relevant times, defendant Vanessa Kinder was ISC-4's Executive Director and defendant Kenneth Peterson was the principal of R.I.S.E.

On the morning of January 20, 2010, a R.I.S.E. teacher sent a distraught student to see plaintiff. The student's close friend, also a R.I.S.E. student, had been shot the night before and was at a hospital in critical condition. Because defendant Peterson was busy conducting student intake procedures elsewhere on the R.I.S.E. campus, plaintiff decided to handle the matter herself. (Defendant Peterson had previously told plaintiff she should handle the school's operations while he was conducting student intakes, and had delegated similar student safety

---

[1] The following facts come from the complaint, and for purposes of evaluating defendants' motions to dismiss, the court accepts them as true.

matters to plaintiff in the past.) After speaking with the distraught student, plaintiff explained the situation to the school's social worker and asked him to also speak with the student. Meanwhile, plaintiff called the mother of the student who had reportedly been shot, confirming the story and expressing concern on the school's behalf. Plaintiff proceeded to spread news of the shooting to the R.I.S.E. staff members, the ISC-4 office, and the injured student's "home" school.

Later that day, plaintiff encountered defendant Peterson in the school hallway and unsuccessfully attempted to discuss the shooting with him. Some time later, plaintiff renewed her efforts, approaching defendant Peterson in his office to speak about the incident. He responded by screaming at her and reprimanding her for calling the student's mother and the ISC-4 office. Plaintiff replied with a trinity of reasons for taking action: she needed to confirm the accuracy of the distraught student's statements (as he was known for being less than truthful); she was worried about retaliation if the shooting was gang-related; and she was concerned about the well-being of the students and staff. Ignoring plaintiff's explanation, defendant Peterson resumed his screaming. In frustration, plaintiff retorted that some people were questioning his job performance and warned him to watch his back.

Half an hour later, an official from the injured student's "home" school arrived at the R.I.S.E. campus to meet with plaintiff. Before meeting with the official, plaintiff obtained permission from defendant Peterson and, in that conversation, "expressed regret for the manner in which their earlier meeting had taken place, including her own reaction and comments."

Plaintiff worked the rest of that day, as well as most of the following day, January 21, 2010. On the afternoon of the 21st, defendants Peterson and Kinder met with plaintiff and told her there was a 99.9 percent chance she would be fired. Defendant Peterson further informed

plaintiff that she was being terminated because he could not trust her. They sent her home, with pay, and told her she would be provided with further information on January 26. On the 26th, defendant Kinder confirmed that she was being terminated.

On February 5, 2010, the ISC-4 Governing Board served a "notice of dismissal" on plaintiff, stating that she had been dismissed "for cause" and "pursuant to Section 10-22.4 of the School Code of Illinois." This notice of dismissal also informed plaintiff that defendant Kinder had provided her (ostensibly in their January 21 meeting) with the reasons for her dismissal.

## DISCUSSION

### I. Legal Standard

A court must dismiss any complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A 12(b)(6) motion tests the sufficiency of the complaint, not the merits of the case. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). The court thus accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citations omitted). To provide the defendant with "fair notice of what the claim is and the grounds upon which it rests," id. at 555, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2). In addition, its allegations must plausibly suggest that the plaintiff has a right to relief and raise that possibility above the "speculative level." Twombly, 550 U.S. at 555, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235-36 (3d ed. 2004).

For purposes of a Rule 12(b)(6) motion, the Seventh Circuit has held that the pleadings consist generally of the complaint, any exhibits attached to it, and supporting briefs. Thompson

4

v. Ill. Dep't of Prof'l Regulation, 300 F.3d 750, 753 (7th Cir. 2002); see Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). While the court must generally accept the allegations in the complaint as true, the court is free to examine independently and form its own conclusions as to the proper construction and meaning of attached documents. Rosenblum v. Travelbyus.com, Ltd., 299 F.3d 657, 661 (7th Cir. 2002) (citation omitted). A plaintiff may plead herself out of court by "attaching documents to the complaint that indicate that he or she is not entitled to judgment." Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp., 179 F.3d 523, 529 (7th Cir. 1999), quoting In re Wade, 969 F.2d 241, 249 (7th Cir. 1992). The "well-settled rule" is that "when a written instrument contradicts allegations in a complaint to which it is attached, the exhibit trumps the allegations." N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 454 (7th Cir. 1998).

## II. Defendants' Motion to Dismiss

Because the Eleventh Amendment "does not curtail subject-matter jurisdiction," the court may—and should, to avoid deciding an unnecessary constitutional question—delay addressing whether defendants are entitled to sovereign immunity until after conducting a merits inquiry into defendants' 12(b)(6) motion. Endres v. Indiana State Police, 349 F.3d 922, 925 (7th Cir. 2003), cert. denied, 541 U.S. 989 (2004); see also, e.g., Bowers v. Nat'l Collegiate Athletic Ass'n, 346 F.3d 402, 418 (3d Cir. 2003) (holding that a court "may reserve judgment on Eleventh Amendment issues if it can resolve the case on other grounds and the prevailing party on the merits would be the same as the prevailing party if immunity were recognized") (footnote omitted); 13C C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3524.1, at

5

269 (3d ed. 2008) ("[I]t seems appropriate to allow a federal court to decide the case on the merits as a way of obviating the need to address sovereign immunity."). The court thus addresses the merits of defendants' motion to dismiss, and determining that plaintiff has failed to state a federal claim, dismisses the complaint in its entirety.

Plaintiff asserts, in Count I of her complaint, that because she was neither provided notice nor an opportunity for a hearing before being dismissed, nor was she provided with any post-termination due process, defendants ISC-4, Peterson, and Kinder deprived her of due process in violation of the Fourteenth Amendment. To state a procedural due process claim, plaintiff must have a protected property interest in continued employment. Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972); Moulton v. Vigo County, 150 F.3d 801, 804 (7th Cir. 1998) ("[T]o determine whether [the plaintiff] alleged a Fourteenth Amendment violation, we must first decide whether he produced evidence showing that he possessed a property interest in his job that is protected by the Constitution.") (citation omitted). Whether plaintiff had a protected property interest in her employment is a question of state law. Id., citing Flynn v. Kornwolf, 83 F.3d 924, 926 (7th Cir. 1996), cert. denied, 519 U.S. 930 (1996). Illinois, where plaintiff was employed, thus provides the applicable substantive law. Johnson v. City of Fort Wayne, Ind., 91 F.3d 922, 943 (7th Cir. 1996). Protected property interests can arise from a variety of sources: state statutory law, contracts, legally binding rules and regulations, and "unwritten common law" of employment. Moulton, 150 F.3d at 804, citing Lawshe v. Simpson, 16 F.3d 1475, 1480 (7th Cir. 1994).

These sources of law demonstrate that plaintiff was an at-will employee, who therefore has no protected property interest in her employment. Harris v. Eckersall, 771 N.E.2d 1072,

6

1075 (Ill. App. Ct. 2002) ("Because an at-will employee can be terminated at any time for any reason or no reason, an at-will employee has no property interest in continued employment."). The general rule in Illinois is that employment is at will. Barr v. Kelso-Burnett Co., 478 N.E.2d 1354, 1356 (Ill. 1985). In contrast to that principle, plaintiff interprets her contract to permit only for-cause termination and thus argues that it gave her a property interest in her employment. This reading, however, ignores the contract's unambiguous language:

> This contract is subject to all laws of the State of Illinois now or hereafter in force and may also be terminated by either party hereto in the manner provided by law or in the event the teaching certificate of Dean of Students is revoked or because of the failure of Dean of Students to conform to and comply with any lawful rule, regulation or order heretofore and hereafter adopted or amended by the Board. (Emphasis added.)

Far from establishing termination only for cause, the contract provides that plaintiff could be terminated for any reason, subject to Illinois law. The language that plaintiff may be terminated "in the manner provided by law" indicates that she could be terminated so long as the discharge was not conducted unlawfully, for example by violating public policy. Turner v. Mem'l Med. Center, 911 N.E.2d 369, 374 (Ill. 2009). Moreover, a separate provision of the contract provides that it will be automatically terminated if the schools are closed: "should the Board deem it necessary to close the schools due to lack of funds during the term of this contract, this contract shall be terminated and dean shall not be entitled to the remainder of compensation or benefits due hereunder." Thus, it is clear from the contract's express language that either party could terminate the contract at any time, and the contract was not assured to continue until its expiration of July 31, 2010.

In addition, plaintiff lacks a protected property interest in her employment because her contract is for an indefinite period, not, as she argues, a definite one. In Illinois, employment

without a definite term is considered at-will employment, terminable by either party for any reason. Schoppert v. CCTC Int'l, Inc., 972 F.Supp. 444, 446-47 (N.D. Ill.1997). Plaintiff's employment contract provides: "This Contract shall terminate as of July 31, 2010 and shall not be renewed unless authorized by the Board." A "contract for employment 'not to exceed' a certain period of time suggests an indefinite term of employment rather than a definite one." Schwarz v. Loyola Univ. Med. Ctr., 659 F. Supp. 2d 988, 993 (N.D. Ill. 2009) (interpreting Illinois law), citing Foiles v. N. Greene Unit Dist. No. 3, 633 N.E.2d 24 (Ill. App. Ct. 1994). This provision states the maximum time for employment, but does not bind either party to an employment relationship for any specific, definite amount of time. Here, plaintiff's contract provides for a maximum period of employment (ending on July 31, 2010) but does not prescribe any obligation—on the part of either party—to maintain the employment relationship for a minimum duration of time.

Plaintiff also incorrectly contends that she has a protected property interest in her employment as a matter of Illinois statutory law. She asserts that she falls under the category of "teacher" for purposes of the Teacher Tenure Act, which makes certain teachers eligible for tenure and provides for statutorily mandated procedures for terminating their employment. 105 Ill. Comp. Stat. Ann. 5/24-11 through 5/24-12 (West 2006). The Act defines a "teacher" as "any or all school district employees regularly required to be certified under laws relating to the certification of teachers." Id. (emphasis added).

Because ISC-4 is not a school district, plaintiff is not a school district employee, and is not a "teacher" for purposes for the tenure provision. ISC-4 is clearly not a school district; it is an entity that provides support to the 66 school districts in southern Cook County. Further,

Illinois law specifies that a "school district" is to be governed by an elected, unpaid seven-member board of education. 105 Ill. Comp. Stat. Ann. 5/10-1; 105 Ill. Comp. Stat. Ann. 5/10-10 (West 2006) (seven-member board for all school districts with population of not fewer than 1000 and not more than 500,000 inhabitants and not governed by special Acts; smaller district governed by three-member board). ISC-4, in contrast, is governed by an eleven-member board whose members are appointed—not elected. Thus, based on the Teacher Tenure Act's definition of "teacher," which applies to "this and the succeeding Sections of this Article," id., plaintiff is not a teacher and is ineligible for the tenure protections provided by that section and the following one.

As defendants correctly point out, the Illinois legislature clearly understood that its definition of "teacher," coupled with its definition of "school district," narrowed the category of state education employees who would be eligible for tenure. The legislature demonstrated its understanding by specifically including teachers in a joint educational program, as established under Section 5/10-22.31a, and teachers in a special education program authorized by 5/14-1.0 through 5/14-14.01, "[f]or purposes of attaining and maintaining contractual continued service and computing length of continuing service." 105 Ill. Comp. Stat. Ann. 5/24-11 (West 2006). But despite its realization that the definition of "teacher" in 5/24-11 bars certain non-school district employees from receiving tenure, it specifically chose not to carve out an exception for individuals who, like plaintiff, worked for intermediate service centers instead of school districts, joint educational programs, or special education programs.

Finally, plaintiff attempts to forestall the inevitable conclusion that her employment was at will by arguing that she must have been tenured because the notice of discharge stated that she

9

was being terminated "for cause" and cited Section 10-22.4. Citation to this provision does not, as plaintiff claims, imply that defendants "interpreted the contractual reference to 'in the manner provided by law,' to mean 'according to the School Code,' and that it required sufficient cause to dismiss her" before her contracted expired. Instead, Section 10-22.4 merely reinforces that dismissals of teachers must be conducted in accordance with the requirements in the Teacher Tenure Act.[2] 105 Ill. Comp. Stat. Ann. 5/10-22.4. The Teacher Tenure Act, as discussed above, does not extend tenure to plaintiff. Further, the "for cause" language in the notice of discharge does not strip the contract of its clear meaning that only at-will employment was provided.

Because plaintiff did not have a protected property interest in her employment, the court need not address whether the lack of notice and a pre-termination hearing deprived her of due process. Plaintiff has failed to state a claim upon which relief can be granted, and defendants' motion to dismiss is therefore granted as to Count I.

Having decided that plaintiff's federal claim must be dismissed, the court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims in Counts II, III, and IV. See 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court dismissed all claims over which it has original jurisdiction."); Groce v. Eli Lilly & Co., 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the

---

[2] Because this provision appears before the Teacher Tenure Act in the Illinois Code, that Act's definition of "teacher" does not apply to Section 10-22.4. 105 Ill. Comp. Stat. Ann. 5/24-11 (limiting, "[a]s used in this and the succeeding Sections of this Article," the definition of "teacher" to "any or all school district employees regularly required to be certified under laws relating to the certification of teachers"). The use of "teacher" here takes its ordinary meaning, which includes plaintiff's former position as Dean of Students at R.I.S.E.

well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

## CONCLUSION

For the foregoing reasons, the court grants defendants' motion to dismiss Count I, and declines to extend supplemental jurisdiction over Counts II, III, and IV, which are thus dismissed without prejudice.

**ENTER:** **December 30, 2010**

*Robert W. Gettleman*

Robert W. Gettleman
United States District Judge